I'll plan on reserving about four minutes for rebuttal and I'll try to keep my eye on the clock. This case presents an interesting and seldom inter-issued before this court. When does the right to independent counsel arise? Well, the short answer is a number of circumstances. One of them is where there are covered and undisclosed circumstances. The insurance company's attorney has the ability to steer coverage towards the uncovered claims. Could you explain very clearly to me which claim would give the insurer an incentive to prove something at trial that would be helpful to the insurance company and harmful to the insured? So the specific claim and how it would be helpful to the insurance company and harmful to the insured. Absolutely. So, for example, I'll just take one of the cases against the insured. It's a case by a woman named Figaro. She claims sexual battery and intentional affliction of emotional distress. And those facts also form at least part of, at least appear to, discrimination, harassment, or retaliation claims. Okay, so putting aside that Argonaut said in its letter that it was only looking at damages, that it would give a defense for those, let's put that aside for a moment. Explain to me how there's a conflict would arise so that the insurance company would have an incentive to steer claims in a direction that would be harmful to the insured. Absolutely. So the insurance company has an incentive in this case to find that all the conduct is intentional. So, for example, if all the discrimination in the case is found to be intentional, there's no coverage. So the other, because there was a range of other coverages offered that were statutory. And are you saying that if it's intentional, that would be a defense for all of the statutory violations that are alleged? No, I'm not talking about the wage and hour claims. There were others. So what specific, for which specific complaints of violations would intentional conduct be a defense so that there wouldn't be any coverage? That's what I was having trouble understanding. Sure, I understand. So let's go into the complaints. They generally allege the same sort of causes of action for each of them. So looking at them, retaliation is one, harassment is another, probably failure to prevent harassment, that's against the lead, discrimination, sex discrimination, sexual orientation discrimination. And you're saying that intentional conduct would be a defense against those? For the insurance company, it's in their incentive to find that all the conduct is intentional, therefore they're off the hook as to those causes of action. So, for example, the sexual battery charge, that would be the intentional conduct that the insurance company would not be responsible for paying? Yeah, that's clearly excluded, assuming that the liability is found. And why would the insurance company have an incentive to sort of concede that argument? Well, it's the sexual battery standing alone wouldn't be an issue, but it's combined. You've got the same set of operative facts as the multiple causes of action, which the insurance might be liable. And the insurance company has the incentive to find intentional conduct, whereas the insurance have the incentive to find non-intentional conduct. It's explained in the Malugan case, which was submitted in our supplemental briefs. And discrimination may or may not be intentional within the meaning of insurance code section 533. We might have had non-intentional sexual battery? Well, not non-intentional sexual battery, non-intentional discrimination, non-intentional harassment, non-intentional retaliation. I'm still not understanding how there's a conflict. So, in other words, the sorts of facts that would lead to showing that the individual engaged in sexual battery would surely also show that he was harassing the individual and these other ranges of violations. So I'm not understanding why it would benefit the insurance company. That may not be the case. For example, discrimination is not necessarily based only on the sexual battery. Right, but they have to have an interest in showing that all the conduct was intentional. And the only claim I see that's even related to that is the battery. So I'm not understanding the sorts of conflicts that California courts have said require separate counsel. Understood. So let me try to back up and walk you through it. So we've got these covered and uncovered claims in this case, at least nominally. So in this case, for example, against all the other plaintiffs as well, there's claims of intentional conduct. And there's also claims that could be construed as non-intentional conduct that also could be the basis for the discrimination, harassment, or retaliation claims. So the case is going to turn on whether the conduct is found to be intentional or not. So if it turns out the conduct is intentional, then the insurer is off the hook for all other claims. Well, all the claims that relate to that, not the wage. So all other claims, which other claims is the insurer off the hook for if it can show that the conduct was intentional? Well, it could be if it was shown that it was intentional retaliation. So they would be off the hook for any intentional conduct? Correct. And the way they could do that is through any number of devices. And the Kumis case, which has been superseded in part by statute, but still provides a good illustration of the types of conflicts that can arise. So it could be through discovery requests that are propounded or not propounded, through verdict forms that are propounded or not objected to. But Kumis, the example they gave was this aircraft where the insurance company, if they could show that it was a commercial carrier flight instead of a sales flight, would be off the hook for first-party liability. And then for third-party, it would allow them to make their case better. So it was very clear there that the insurance company had an incentive to prove something that was to the disadvantage of the insurer. I'm having trouble seeing that in this case. Well, as I mentioned, Your Honor, if they find, for example, if there's a verdict form, and the verdict form that's suggested by the plaintiff says, we want you to find that the discrimination by the insurers was all intentional conduct. And Argonaut's incentive is not to object to that, because if that's their finding, there's no liability for the insurer. Let me make a little bit different run, I think the same kind of question. So let's take the sexual harassment charge. It seems to me that there's sort of three things that a jury might conclude. That is, that there was no sexual harassment, or that there was non-intentional sexual harassment, or that there was intentional sexual harassment. Now, if there's no harassment, both Argonaut and your client to leave home are off the hook. If it's non-intentional sexual harassment, then Argonaut's going to pay. If it's intentional sexual harassment, then Elite Home is going to pay. Now, as between intentional sexual harassment and no sexual harassment, is there any evidence here that the insurance company would come in and adopt a strategy of trying to show that there was intentional sexual harassment? If what they're really trying to do is deny any liability at all? It seems to me that the insurance company's responsibility here, and the natural inclination of the lawyers in defending a case like this, is to say there's no sexual harassment. And that, of course, benefits both parties, and there's no conflict between you and your insurance company. Well, they may not have that choice. In this case, there are allegations already. The choice is not necessarily between no harassment and intentional. It's going to be between, at least the allegations are set forth in the complaints, it's going to be between intentional or non-intentional. And that's a choice that Argonaut's going to have to make decisions on all across the way. And that's why there's a conflict. Yeah, but if the insurance company is going to come in and say, well, we can see that there's sexual harassment, but we want you to know it's intentional, there's clearly a conflict there. This is no defense whatsoever, and they need to get out of the business. I mean, that would just be obvious. But if they're going to assume the defense here, the claim has got to be there's no sexual harassment. And it's very difficult, I think, for the insurance company to come in and say, well, there was no sexual harassment, but in the alternative, if there was harassment, it wasn't non-intentional, it was clearly intentional. That just seems like just an awful, awful strategy, and that no self-respecting lawyer would ever do. If they get to that position, again, it seems to me counsel has got to get out of the business, because then you've got a humus problem. Understood. But I'm not sure why, from the outset of the case, you've got that problem. Well, the issue is there's no evidence that we're going to be in a situation where there's going to be a finding of no intentional conduct. We have to assume that the allegations are set forth. That's what we're dealing with here. And so the choice is, at least perhaps, there's going to be definitely a… Yeah, but we expected that you were going to file an answer, and the answer is going to deny liability. It's not going to concede that there was harassment, but argue that it was intentional rather than negligent. Sure, understood, Your Honor. But if that was the case, if it was the case that we were always arguing, and there would never be a conflict in almost all these cases, in this case, you've got allegations of conduct that's covered, at least nominally covered employment claims, and intentional conduct at the same time. And Argonaut has the ability… But if your theory is correct, then you're almost always going to have a conflict, and an insurance company will never get to choose its own counsel. It's always going to be responsible for finding… Well, not necessarily. I mean, I can't foresee every situation, but if there's intentional conduct that's based on… But in almost any case in which there's going to be a reservation of rights, you're going to be able to imagine some kind of a conflict. Well, I don't know. I mean, I can't foresee every situation where an intentional and non-intentional is going to come, and what the various scenarios are going to be. So the California courts say we should look to the reservation of rights letter, and here the insurer Argonaut said, we'll cover everything except for these damages for the sexual battery and I think the wage and hours, which is separate. And the state court says, and if they just make a general reservation of rights, that doesn't go towards finding a conflict. So why didn't Argonaut do what the state courts required in eliminating any lurking conflict that might be there? Well, if you look at the Argonaut's reservation of rights letters, it says, to the extent coverage is barred by applicable law, the policy will not provide coverage. So that's like the general reservation of rights, which the California courts have said doesn't count towards conflict. Well, as we've explained, the extent barred by law means that it cannot cover intentional conduct. And as we've also explained in our brief, even if they hadn't said that sentence, they're simply prohibited from covering intentional conduct under insurance code section 533. So they argue you waived that argument because you didn't raise it below. Also, it seems unclear to me that in fact, once the incident has occurred, that they can't cover it. I mean, I can understand why there would be public policy saying you can't cover intentional sexual battery in advance, but... I understand. Well, the law is, if you look at the Downey Venture case, insurance code section 533 is a representation of public policy and its provisions cannot be waived. I think that's footnote 36. Right, but it hasn't been interpreted. I mean, I can see why you can't enter into a policy covering it, but whether you can defend it after the fact is a whole different question. Well, otherwise, you know, they'll have no effect. I mean, insurance companies will simply say, we're going to cover intentional conduct and its provisions of section 533 will be a nullity. And certainly the legislature cannot have intended that. May I ask a different question? Sure. If Argonaut did not specifically reserve its right to exclude intentional torts, would Argonaut then be stopped from raising it as a bar to coverage later? You're, I believe, referring to the Tomerlin case. Is that what you're getting at in terms of what they, if they say we're going to cover intentional conduct, then they're on the hook later? Well, if you look at, there's a case called Tomerlin, and that was a case where there was a reliance by the insured on that representation and said you can sue the insurer after the fact. In this case, we said no. Tomerlin was after the fact and Downey was before the fact. Yes, but in Tomerlin, there was reliance by the insured on that and they dropped their independent counsel. Here, there's no dropping of independent counsel. We said, no, we know you can't cover intentional conduct. There's a conflict here. We want independent counsel. But stepping back, there's a preliminary issue. What's your best case on that? I'm sorry? What's your best case on that proposition? Downey Venture. I mean, Downey Venture says as clear as day, the provisions of Section 533 cannot be waived. All right. But stepping back, there's a preliminary issue, which I meant to mention at the beginning, that's dispositive of this case, and that is Argonaut simply has admitted it's burden of proof on summary judgment, and that's the Gafcone case. The Gafcone case instructs that in order to meet your burden of proof on summary judgment, you have to prove with admissible evidence of how you as the insurer could not impact the coverage decision. And they simply did not submit that evidence. If you look at the Gafcone case, it talks about, in that case, the insurer submitted evidence of the policy, evidence of the complaint, and perhaps some communications. And the Gafcone case said that's insufficient as a matter of law to meet your burden of proof. Same situation here. Argonaut submitted the policy, the complaints, and evidence of reservation of rights letters, back and forth, but did not submit admissible evidence of how it could not impact the coverage decision. So as an initial matter, Argonaut has not admitted its burden of proof, and you needn't go any farther than that, and the case is over, done, period. So that's what I would expect the Court to focus on in terms of the case. And if there are no other questions, I'll reserve the rest of my time. Okay. Thank you, Mr. Schlechter. Thank you. Good morning. Bruce Smyth for Plaintiff & Appley, Argonaut Insurance Company. May it please the Court. The principal issue, or the initial issue here, about the right, the duty to defend, is governed by Section 2860, and it specifically addresses the circumstances here. It provides that Argonaut, if an insurer denies coverage, a conflict does not exist, but if a conflict may exist, the insurer reserves its rights on a given issue, and the outcome of the issue can be controlled. Was there anything in... I want to go back to a question I think Judge Nelson asked Mr. Schlechter. So if Argonaut had not sent those initial letters saying we've got a reservation of rights, would it have had to pay just everything? If it assumed the defense, and let's assume that Elite Home lost, would Argonaut have been responsible for paying everything? Or can they come back and say, well, we just want you to know, of course, under our contract, we can pay this, but we can't pay that. Well, I think Argonaut, once it got the tender of the claim, had to basically put forward the rights it was reserving. And the rights it was reserving were only things that were in the contract. That's right. All they're doing is just repeating what's in the contract. Well, and affirmatively choosing not to assert some of the reservations that they potentially could have asserted. One of them was they chose not to assert intentional conduct as a ground for reserving rights. They also chose not to assert Section 533, the willful acts exclusion, and a number of others. And there was some discussion earlier about this general reservation of rights, and the case authority is, in fact, correct that it doesn't constitute a ground for independent counsel. But more than that, Argonaut went back and said, look, we want to be clear about this. We're only reserving as to two damages issues, unpaid wages and bodily injury, and essentially nothing else. And would that be binding on Argonaut after the fact? So the trial is over and Argonaut says, well, I've changed my mind. We are not going to pay for these other things as well. Could the insured go into court and say, look, I have this reservation of rights letter there on the insurance companies on the hook, even though my insurance contract may not cover it? How does that work? I think in those circumstances the insurance companies have stopped. They would be stopped if they hadn't asserted in their reservation of rights in these types of circumstances. But they also went back and forth with the counsel for the insurance saying, look, this is what we're limiting it to, these two issues. So even if it weren't an estoppel in some cases, it would be pretty clear in this case. And that was an affirmative choice that the insurance company made in order to retain control of the case and in order to use its appointed counsel. So you can see that you would be estopped. In this case we would. How does this affect our conflict of interest analysis? Well, I think it affects it because it limits it to only the two issues on which rights were reserved. The intentional torts and the code section. We did not, actually we did not limit it. Well, as to those, Argonaut did not assert intentional torts as a ground for intentional conduct or Section 533. It was only as to the damages for unpaid wages and for bodily injury. And those issues are ones that are basically determined by the factual record. There's either going to be physical injury or not. There's going to be claims for unpaid wages or not. And you can't convert a claim for sexual harassment into an unpaid wages claim that's not covered. So there's no conflict that could be controlled by the insurer-appointed counsel, which is really the test here. And the cases that were cited and relied on by the district court, Blanchard and State Farm say you're relying on only exclusions for damages and there's no incentive by the insurer that there's no conflict. The argument, essentially, that is made by the defendants that Argonaut cannot limit its reservation of rights was something that was recently rejected in the Swanson case we cited, which basically said that if the insurance company modifies its reservation of rights and eliminates the basis for which there was a right to independent counsel, it can stop paying for independent counsel even mid-case, which shows, again, that how the reservation of rights really is the starting point of the determination. The other argument they've made, that the mere existence of covered and uncovered claims gives an incentive to the insurance-appointed counsel to steer coverage is basically refuted by Section 2860, which says that the mere fact that there's a reservation where coverage is denied is not sufficient to establish a conflict requiring independent counsel. And this argument in 533, there's two responses to that. First is it wasn't raised in the trial court and the standard for it to have been raised is if the trial court had the opportunity to rule on it, and it didn't. That issue was not raised, so it has been waived. But secondly, Argonaut did not assert Section 533 or intentional conduct as a grounds for its reservation of rights. It merely limited it to those two damaged claims. And so, as the court found in Downey Venture, it said that there were circumstances where there's a post-tort waiver of a right, and the policy of Section 533 is not offended where the insurer, after the act allegedly is committed and its reservation of rights, says that it's not going to reserve rights on those grounds. And the Tomerlin case, which was also cited, basically the court held that you could have an estoppel even of claims under Section 533, and that that would not offend the bar of willful acts on Section 533. So we submit that the defendants have not established that the outcome of the two issues involved here, the damages for unpaid wages or bodily injury, could be controlled by appointed counsel. And because they don't, as a result, have the right to independent counsel, and Argonaut was deprived of the ability to defend the case with its own counsel and to control the defense for virtually the entire pendency of the case, the decision of the district court was made right at the time of the three weeks before the trials were set to commence that that constitutes a substantial prejudice and mandates the excusing of Argonaut's obligation to indemnify. Could you also address opposing counsel's argument that under Gaffcon, Argonaut didn't sufficiently carry its burden? I think Gaffcon does not... What they are arguing that Gaffcon sets forth is that the insurer has to breach or has to demonstrate that there's absolutely no possibility under the sun in the future that there would ever be some kind of conflict. And I think the standard is, in the cases, and the standard that the district court correctly applied is, can the damages here be ones that were the outcome of whether they're covered or not could be controlled by counsel? And they haven't provided a theory or an example of how that could be done, and they also haven't shown what the incentive would be for defense counsel to do that. It's difficult to understand how a strategy, for example, on the unpaid wages... First, why defense counsel would want to argue that sexual harassment claims are unpaid wages, but how they could do it? It's converting lead into gold. It would be nice, maybe, but it can't be done. And the court cited cases in similar types of breaches of the duties or of the rights of the insurance company where it did find the policies exonerated or at least the obligation of indemnity was excused. And those cases are Martinez and Abdulhamid and Ram. The GAFCON also... Let me make one other point about that. That was a circumstance where the insurance company just submitted a declaration by the insured appointed counsel where it said, you know, I didn't take any role in the determination of the reservation of rights. And the standard is whether evidence was introduced that could show that the defense counsel could have affected the outcome of the issue. And the insurance company in that case didn't do that. But the GAFCON case also says that the requirement has to be, the evidence has to be that the outcome would be affected and not just that there might be some potential conflict. And the standard that's basically offered by the defendants is there would be a conflict in every case. There'd never be counsel appointed by the insurer. And the key, the point here is that the basic agreement of the insurance contract is the insurer will cover the claims, but it has to retain the rights to control the defense of the case except for the circumstances under 2860. And those have not been established. And here they lost control of the strategy of the case, the right to determine depositions to be taken, the ability to cap any obligation for a further payment if they recommended a settlement or to stop the payment of ongoing defense fees. And I think also the only cases that have been cited here that directly deal with this issue found that there was just such pressure. It's the Travels v. Sentex case, which was in the district court, and the Twin City Fire Insurance Company case, a Fourth Circuit case. And the cases that were cited by the defendants, the Billington-Campbell v. Allstate-Bells v. Clarendon and USAA cases, all involve circumstances where there was a judgment which was obtained by an injured party on default against the insured. And basically the court in that case said, well, yeah, in those cases said, well, when the insurance company wants to raise the issue of the lack of cooperation of the insured in those circumstances, as to the injured party, it must show that it would have prevailed. That's not the standard in general for prejudice. In the Shell Oil case, the court said that the insurer must show that it would have lost something, that it would have changed the handling of the claim, would have settled for less, or taken steps to reduce or eliminate the insurance liability. And the circumstance we have here is that they lost the right to control the defense, but they still, if they're not exonerated or excused, they still face the possibility of liability. And the final case I want to discuss, the USAA versus Martin, they cited for the proposition that the insurer has to show or can't show during the pendency of the action that there was prejudice. And that case was really a declaratory relief case against the injured parties and not against the insured. There was a case, a deck relief action against the insured, but that wasn't the subject of the appeal. So Martin stands only for the proposition that a claim, a declaratory relief against injured parties is premature, where the injured parties don't yet have a judgment against the insured, because they don't yet have an insurance claim. I'm going to run out of time if there are any questions. It doesn't appear there are any additional questions, so thank you, Mr. Smyth. Mr. Schlechter? So I'd like to pick up the last point first, which is the issue of prejudice. Number one is what counsel described is not the correct standard. The standard is could you obtain a better result? And that's under several California cases which are binding in this diversity case. And the U.S. versus Martin case is another third-party case where the court said logically you can't make the showing of prejudice while the main tort action is pending. And at the time of this case, the decision on summary judgment of the case was pending, and it's still pending. So you simply cannot make that showing of how exactly they were prejudiced. In addition, their evidence as to prejudice was completely conclusory. They said we've been unable to take depositions or settle this matter. Number one is it's conclusory. Two, it was controverted by other evidence. We submitted evidence that we did include them in settlement and discussions. We did keep them updated about the case. So that's the issue of prejudice, and I don't believe there's a breach of the cooperation clause. But going back, counsel has not organized or still has not explained how they met their burden of proof under GAFCO. GAFCO is very clear about how an insurance company can meet its burden of proof. Did this prove a conflict of interest? And they simply haven't done so in this case. They did not submit evidence of how they could not control the outcome of the coverage decision. And the last point I make is that counsel argues that he would be stopped, that Argonaut would be stopped from ensuring, from indemnifying intentional conduct. But the problem is that's not clear at all from their reservation of rights letters. They did not say we're going to be indemnifying intentional conduct, in which case we would have said, oh, okay, well, then we'll go forward. They gave us a vague reservation of rights letter saying, well, we're excluding coverage to the extent it's barred by law. Well, what's Elite and Whitford supposed to do with that information? How are they supposed to react to that? They correctly assumed that intentional conduct cannot be covered by insurance, and they said so. And throughout this case, you've noticed that Elite and Whitford have argued specifically, what are you doing about the intentional conduct claims? And Argonaut has never given a specific answer. They didn't in their reservation of rights letters, they didn't before the district court, and they haven't done it in this brief. And you'll notice in that respect, in Argonaut's brief, they don't say they're indemnifying intentional conduct claims. They don't say that at all. So Elite and Whitford are in the position of having to assume or believe and have a good grounds to that the intentional conduct is not covered and it does create a conflict. So unless the court has any other questions, I'll submit. Thank you. Thank both counsel for the argument. The case is submitted. Final case on the oral argument calendar, United States v. Oregon.
judges: Nelson, Bybee, Ikuta